Robert B. TURNER, et al., Plaintiffs,

v.

JOHNSON & JOHNSON, et als, Defendants.

Civ. A. No. 79–2259–Mc.

United States District Court,
D. Massachusetts.

Dec. 5, 1985.

Joseph S. Iandiorio, Waltham, Mass., Daniel R. Shulman, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., Joseph M. Alioto, San Francisco, Cal., Jerry Cohen, Cohen & Burg, P.C., Boston, Mass., for plaintiffs.

Frederick T. Davis, Patterson, Belknap, Webb & Tyler, New York City, Herbert Weissblum, Riemer & Braunstein, Boston, Mass., for defendants.

MEMORANDUM AND ORDERS

ON MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT, MOTION FOR A NEW TRIAL, AND MOTION UNDER RULE 59(e) TO AMEND THE VERDICT

McNAUGHT, District Judge.

This civil action was instituted November 13, 1979. On October 22, 1982, I dismissed those claims based upon federal anti-trust law. On June 28, 1985, I made factual findings from the bench, resolving the claim under Massachusetts General Laws c. 93A in favor of the defendants. The plaintiffs alleged that they were induced into signing an Agreement on June 17, 1976 by affirmative misrepresentations and non-disclosures in negotiations leading to the Agreement. On June 28th also, the jury returned a verdict against the defendants Johnson and Johnson, Charles M. Hartman, and Gene E. Hollen in the amount of $4,000,000. On July 3, 1985, judgment was entered in the amount of $4,000,000, with $2,705,078 in pre-judgment interest under Massachusetts General Laws c. 231, § 6B. The totality of the judgment was $6,705,078.

The defendants have moved for judgment notwithstanding the jury verdict, or in the alternative, for a new trial. They have asked also for amendment of the verdict to eliminate the award of pre-judgment interest.

Plaintiffs have contended, and the jury by its verdict has agreed, that statements on the part of defendants Charles M. Hartman and Gene E. Hollen fraudulently induced the plaintiffs into signing the Agreement of June, 1976, and that therefore the corporate defendant is responsible for damages causally related to the inducement. The jurors answered affirmatively the following interrogatories: (1) Did the defendants make misstatements during the negotiation leading to the June 16, 1976 Agreement? (2) If a misrepresentation was made, was it made by Mr. Hartman or Mr.

Hollen? (3) Did a misstatement pertain to a material matter? (4) Did the defendants intend the plaintiffs to rely on the misrepresentation? (5) Did the plaintiffs rely justifiably on the misrepresentation? and (6) Were the plaintiffs damaged thereby? I charged the jury that if the plaintiffs were entitled to damages, those damages would consist of the difference in value between the sum which was received by the plaintiffs for the assets of American Medical Equipment Corporation on June 17, 1976 and the fair value thereof. As recited hereinbefore, the jury decided upon a figure of $4,000,000.

In support of the motion for judgment notwithstanding the verdict, defendants have argued that the plaintiffs have failed to meet "their heavy burden" of proving by clear and convincing evidence that the defendants made material misrepresentations or that there was reasonable reliance by the plaintiffs on such misrepresentations. They contend that there was nothing in the evidence establishing any non-disclosures which were actionable wrongs, and argue that there was insufficient evidence to support the jury's finding as to damages.

Plaintiffs, by a letter dated September 10, 1985, sent copies of an order and opinion dated July 26, 1985 entered by Judge Freedman, in the case of *A.F.M. Corporation v. Corporate Aircraft Management,* Civil Action 626 F.Supp. 1533 (D.Mass.1985). They called specifically to my attention the comments of Judge Freedman at pages 1549–51 of his opinion concerning the relationship between a jury verdict on common law counts and the court's determination of a claim under Chapter 93A of the Massachusetts General Laws. There, as here, the Court's "findings of fact (were) inconsistent with the jury's general verdicts ...". Judge Freedman stated in Footnote 20 that the inconsistency should not be taken as intimating that a judgment notwithstanding the verdict is appropriate. The standard for granting a judgment notwithstanding the verdict under Fed.R.Civ.P. 50(b), said he, is that without weighing the credibility of the witnesses, there can be but one reasonable conclusion. He cited *Brady v. Southern Railroad,* 320 U.S. 476, 479–80, 64 S.Ct. 232, 234–35, 88 L.Ed. 239 (1943), and concluded that "it is often possible for there to be two reasonable conclusions as to an appropriate verdict." I am aware of, and accept, the proposition that the jury has the power to find the facts on issues submitted for their determination, and that inconsistency between their factual findings and my own on the issues submitted to me for determination, plays no part in resolving the question presented on a motion for judgment notwithstanding the verdict. I thought that I had made that clear at the time that I issued my findings on the claim under Chapter 93A.

The plaintiffs in their "Response to Defendants' Post-Trial Motions" described the issues as being (1) whether the evidence adduced by the plaintiffs was sufficient for the jury to return a verdict in plaintiffs' favor on the fraud claim, and (2) whether the evidence supported the jury's damage award. Defendants phrase the issues a bit differently. They inquire whether there is evidence in the record to support the jury's findings that the statements of Messrs. Hartman and Hollen fraudulently induced the plaintiffs into signing the Agreement of June 17, 1976. They insist that the terms of the Agreement and the evidence of its negotiation compel the conclusion that there is no such evidence.

One matter may be disposed of summarily. There is no evidence that any of the statements characterized as misrepresentations by the plaintiffs were made by Mr. Hollen. The verdict as against him, therefore, must be set aside and judgment must be entered in his favor. It is so ORDERED.

Since we are determining whether a motion for judgment non obstante veredicto should be allowed, the evidence presented to the jury must be viewed in that light most favorable to the plaintiffs. Defendants are correct in their contention (page 4 of their Memorandum of Law in Support) that we do not simply search the

record to see if plaintiffs have adduced any evidence on each of the elements they must prove. A scintilla is not enough. *Liberty Leather Corp. v. Callum,* 653 F.2d 694 (1st Cir.1981). We start our search for substantial evidence, noting as in the past, that since the plaintiffs are asserting that they were fraudulently induced into signing the Agreement, they are not barred by the parol evidence rule from pursuing that claim. The central issue is whether there was a sufficiency of evidence of fraudulent representations which induced these businessmen to enter into the Agreement in question.

In my instructions to the jury, I recited my understanding of the alleged misrepresentations. (Tr. Vol. 14, p. 26 ff) Plaintiffs alleged misrepresentations to the following effect: (1) J & J would promote the sale of the Meditemp thermometer, would offer it to customers, and would educate health care professionals on how to use them; (2) J & J had no interest in any other thermometer except for an option on the part of Arbrook to acquire what was called an "IVAC-type" thermometer; (3) J & J had a policy that they would not agree to royalties for inventors where those royalties were based on international sales; (4) J & J (under a duty to disclose) made material non-disclosures, failing to tell plaintiffs that a thermometer being developed by Arbrook had a time and temperature feature, that it infringed upon a Meditemp patent, that J & J intended to "manipulate the outcome of a patent proceeding which it created", and that J & J intended to suppress Meditemp so that it would not be competition for Survalent (the thermometer being developed by Arbrook).

The plaintiffs in their "Response" call the attention of the Court to the following, as evidence which would permit the jury to find that the defendants made material misrepresentations to induce plaintiffs to enter into the Agreement of June 17, 1976. First, as to the alleged misrepresentation contained in the J & J promise to promote the sale of the thermometer, offer it to customers and educate people in the health care field, plaintiffs (Resp. p. 14) assert: "Plaintiffs testified that defendants made such a misrepresentation; and, again, under cross-examination, Mr. Fine admitted the misrepresentation ... Its falsity was easily inferable by the jury from the evidence that J & J did not promote and develop the product,...." J & J answers that this could not be a misrepresentation relied upon by the plaintiffs; that on March 12, 1976, three months before the Agreement was signed, the plaintiffs knew that J & J intended to proceed with two thermometers. Plaintiff Ramsey's notes (Defendants' Exhibit 260) read in part that Mr. Johnston was concerned about J & J's purchase "for the shelf". There is definitely a reference to "2 new units". Furthermore, on April 13 of that year, J & J sent a "letter of intent" stating that the ultimate agreement would contain express provisions that Johnson & Johnson should *not* be obligated to deliver any best efforts in the marketing of Meditemp. A draft of the agreement dated May 3, 1976, and all succeeding drafts (to be found in the Agreement as Section 12.1) specifically provided that J & J had no obligation to market Meditemp, nor to use its best efforts. The alleged misrepresentation with respect to promoting the Meditemp thermometer (claimed to have been relied upon by plaintiffs) is directly contradicted by the terms of the Agreement between the parties. Query: Were this the sole basis for the claim of fraud in the inducement, under the law of the Commonwealth of Massachusetts, would judgment have to be entered for the defendants? Defendants cite *New England Foundation Co., Inc. v. Elliot A. Watrous, Inc.,* 306 Mass. 177, 27 N.E.2d 756 (1940) as authority for an affirmative answer. There is no question that under the plain terms of this contract, Johnson & Johnson could acquire and market any electronic thermometer that it wished. Plaintiffs' only right was to receive a maximum of four guaranteed payments. On the other hand, the fact that the Agreement is plain and contains such a provision does not "conclusively establish that no false representations were made to induce the

(sale of the assets of AMEC)", to borrow phraseology employed in *New England Foundation Co., Inc.*, supra, 27 N.E.2d at 758.

Plaintiffs are correct when they contend that a jury could find (although based upon evidence which I did not accept in making my findings and conclusions on the Chapter 93A aspect of the case) that the defendants promised that they would do everything possible to develop and promote the Meditemp. The plaintiffs themselves did indeed testify that such a representation was made, and Mr. Roger S. Fine's testimony (see esp. Vol. 12, p. 95) that plaintiffs were told that defendants had every intention of doing everything they reasonably could to make Meditemp a success and "expected them to rely on it", added to a possible basis for a factual finding to that effect. The jury then might infer reliance upon the representation despite the contradictory portion of the Agreement—as an inducement to enter into the sale of the assets. They may have inferred (and whether mistakenly or not, they were entitled to do so) that defendants inserted a "best efforts" clause, explaining it away to the sellers as just "language" required by way of policy, when in fact defendants were misstating their intention (an intention to obtain the Meditemp and put in on the shelf).

Was there evidence which would permit the jury to find that defendants represented falsely that they had no interest in any thermometer other than the Meditemp, with the exception of an "IVAC-type" thermometer? Once again, the answer is "Yes". "Survalent", the thermometer of electronic type being pursued by a J & J subsidiary, was referred to as such by the defendants in May of 1976, or at least so the jury could have found, and plaintiffs were told not to be concerned about it. The jury may have accepted the contention of the plaintiffs that "IVAC-type" was a misdescription of Survalent; that it led the plaintiffs to conclude that the Survalent did not have a pulse rate timer, and that Meditemp was unique in that respect, when in fact it was not. This, they could find, acted also to induce entry into the Agreement. All the while, they may have concluded, J & J instigated an interference involving the time-temperature claim, intending to promote the Survalent, rather than Meditemp.

As for the alleged "policy" against agreeing to royalties on international sales, the testimony of the plaintiffs was enough for a finding in that regard, if the jurors accepted it. They obviously did.

With respect to the alleged "nondisclosures", if the jury made the affirmative findings requested of them (and on which there appears to have been a sufficiency of substantial evidence to do so) the "nondisclosures" almost follow logically. If the Survalent was described falsely as "IVAC-type", the jury could find that there was a failure to disclose the feature which was allegedly so important. If the jurors found an intention to put the Meditemp on the shelf after obtaining it, they could find a failure to disclose the intention (and so forth).

Once again, although I did not personally accept testimony of the plaintiffs as to misrepresentations allegedly made by defendants, the jurors could and must have done so. They could have found justifiable reliance on the misrepresentations if they so wished—that plaintiffs would have refused to sign the Agreement had they been aware of the true intentions of the defendants. At any rate I cannot rule that reasonable men could not have relied reasonably on the misrepresentations, if they were made.

As for the element of reasonable reliance, it was for the jury to determine what was or was not reasonable. They were informed that a misrepresentation, to be actionable, would have to be material, and that a matter is material if in the absence of it, a reasonably prudent person would act differently. Although defendants argue that logic militated here against a conclusion of reasonableness, the jury did not have to accept the argument. As reasonable persons, they could have arrived at another conclusion.

Instructing the jury on the issue of damages, I stated that if there was a finding in favor of the plaintiffs, the jurors should award the difference between the value of the assets of AMEC and the amount that was paid for them. The jury assessed the damages at four million dollars. Defendants in their memorandum contend that the award is based upon pure conjecture, and insist that it must be vacated for "insufficiency of evidence". Both parties call to the attention of the Court in their supporting papers the opinion of Robert Turner that the assets were worth $8,300,000 at the time of their sale to Johnson & Johnson, and the opinion of Dewayne Scheer of $10,000,000. It is true, as defendants argue that Mr. Turner was a distinctly interested witness, but that fact does not negate consideration by the jury of the opinion that he had to offer. Mr. Scheer's opinion was recited after he reviewed a damage schedule and an offering prospectus. It is a fact that Mr. Scheer faced a number of obstacles in offering his opinion. Certain of his testimony was not allowed to be heard by the jury. This must have caused him to "shift ground" to some degree, and he conceded that the figure at which he ultimately arrived reflected an opinion adopted by him during the morning break in his testimony. The jury did not have to ignore what he had to offer, however.

And these were not all of the figures which the jury could take into account. There was the possibility that the plaintiffs could have realized, by way of a maximum, the sum of $1,271,000 from the sale of their business. There was the "offer" composed by Mr. Johnston in 1975 in which he apparently suggested that the plaintiffs should look for a total cash requirement of $735,000. Johnson and Johnson agreed to pay minimum royalties of $300,000, after having paid close to a million dollars at the closing. In February of 1980 Mr. Hartman sent a memorandum to a Mr. Ventrella on the subject matter of "Proposed Negotiations Concerning the Sale of the MEDI-TEMP Brand Digital Fever Thermometer Business". In part he wrote: "We would inform them that our asking price for the business is $3,000,000 (3mm)". (Plaintiff Exhibit 715)

The figure decided upon by the jurors was not, necessarily, the subject of speculation. It could well be that they took into consideration the figures that have been mentioned all along through the negotiations to the point where Mr. Hartman wrote his memorandum, and "applied" them in a fashion to the opinions offered by Mr. Turner and/or Mr. Scheer. They may have made adjustments to those sums which seemed reasonable, considering and making allowances for the interest or bias of the people who offered the figures.

In the light of the evidence presented, as a whole, I cannot rule as a matter of law that the jury based its determination upon conjecture. I shall not, therefore, set aside the verdict or order a new trial.

Finally, there remains for consideration, the matter of defendants' motion under Rule 59(e) to amend the verdict which was entered July 3, 1985, to eliminate the inclusion of pre-judgment interest. On this score, the defendants are correct. The judgment should be in the amount of $4,000,000 with interest on that amount from June 28, 1985, the date on which the jury returned the verdict in favor of the plaintiffs. As Judge Skinner ruled in *Rokowsky v. Gordon,* 531 F.Supp. 435 (D.Mass.1982), since this matter is governed by substantive Massachusetts law, in tort actions other than those enumerated in General Laws, c. 231, § 6B, interest runs from the time that damages are liquidated by award or verdict. This was an action other than those enumerated in that chapter and section. As in *Rokowsky,* this is an instance in which the plaintiff alleged fraud in the inducement of a contract.

As noted by defendants on December 20, 1983, a new section 6H was added to chapter 231, providing in part that: "in any action in which damages are awarded, but in which interest on said damages is not otherwise provided by law", pre-judgment interest is to be added from the date

of the commencement of the action. Section 3 provided, however, that the new section 6H would apply only to actions commenced on or after the effective date of the Act. This action was begun in 1979.

The motion to amend the judgment is allowed.